**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**TYSON POULOS,**

**Plaintiff,**

    **vs.**

**COUNTY OF WARREN; WARREN COUNTY
SHERIFF'S DEPARTMENT; CORRECTIONS
OFFICER DUSTIN SPRING,** *in his individual and
official capacities***; CORRECTIONS OFFICER
CHARLENE MADAY,** *in his individual and official
capacities***; CORRECTIONS OFFICER MATTHEW
HUBBARD,** *in his individual and official capacities***;
CORRECTIONS OFFICER CHRISTOPHER PERILLI,**
*in his individual and official capacities***; SERGEANT
BARRETT SPRING,** *in his individual and official capacities***;
INVESTIGATOR CHRISTOPHER HATIN,** *in his
individual and official capacities***; and THE WARREN
COUNTY DISTRICT ATTORNEY'S OFFICE,**

**Defendants.**

    **1:21-CV-96
(MAD/CFH)**

---

**APPEARANCES:**                    **OF COUNSEL:**

**TYSON POULOS**
**14-A-3688**
Attica Correctional Facility
Box 149
Attica, New York 14011
Plaintiff *pro se*

**JOHNSON & LAWS, LLC**          **GREG T. JOHNSON, ESQ.**
646 Plank Road, Suite 205          **OLIVIA G. REINHARDT, ESQ.**
Clifton Park, New York 12065
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff commenced this action on January 27, 2021, asserting claims for malicious prosecution, false imprisonment, falsification and spoliation of evidence, conspiracy, and deprivation of a fair trial against all Defendants.  *See* Dkt. Nos. 1 & 11.  Plaintiff also alleged *Monell* liability against Defendants Warren County, the Warren County Sheriff's Department, and the Warren County District Attorney's Office.  *See id.*

On September 22, 2021, this Court granted Defendants' motion to dismiss in its entirety and closed this case.  *See* Dkt. No. 28.  Plaintiff subsequently appealed, and on June 15, 2023, the Second Circuit affirmed in part and vacated in part this Court's order of dismissal.  *See* Dkt. No. 28.  Specifically, the Second Circuit held that this Court erred in dismissing Plaintiff's claims for malicious prosecution, denial of fair trial, and falsification of evidence.  *See id.* at 6-8.

On March 12, 2024, the Court issued a discovery order which established an initial discovery deadline of June 14, 2024.  *See* Dkt. No. 51.  Plaintiff's refusal to respond to Defendants' discovery demands or Defendants' Notice to Admit, and his refusal to participate in two depositions ordered by this Court prompted a series of discovery-related orders and conferences, which effectively extended discovery through July 2024.  *See* Dkt. Nos. 53, 58, 62-64, 67-68, 70-72.  Not only did Plaintiff ignore Defendants' discovery demands and Notice to Admit, Plaintiff also ignored Defendants' good faith letters and numerous orders issued by this Court.

On September 30, 2024, Defendants moved to dismiss for failure to prosecute and, in the alternative, for summary judgment.  *See* Dkt. No. 73.  Despite receiving notice of the motion, Plaintiff has not filed a response or sought an extension of time to do so.  For the reasons set forth below, Defendants' motion is granted.

## II. BACKGROUND

On January 20, 2014, Plaintiff was present with a female accomplice at the Budget Inn Motel in Queensbury, New York where "packaged" illicit drugs were recovered by the Narcotics Enforcement Unit, prompting Plaintiff's arrest on charges for drug possession and on the basis of an outstanding arrest warrant. *See* Dkt. No. 11 at ¶¶ 18-23. Plaintiff was remanded to the Warren County Jail ("WCJ") on January 20, 2014, where he remained incarcerated until August 21, 2014, upon his August 2014 conviction of two counts of Aggravated Harassment under New York Penal Law § 240.32. In May 2016, Plaintiff received a thirty-year prison sentence following his May 2016 conviction on the January 20, 2014, drug possession charges and subsequent additional felony charges. *See id.* at ¶¶ 28, 91, 96.

After Plaintiff was booked in the WCJ on January 20, 2014, he was placed on a constant/suicide watch where he was under the continuous supervision of Warren County Correction Officer (hereinafter "CO") Perilli in WCJ's B-Pod as of the morning of January 23, 2014. *See* Dkt. No. 81 at ¶¶ 5-6. Plaintiff was also placed on a methadone withdrawal protocol as a result of his heroin use. *See id.* at ¶ 7. On the morning of January 23, 2014, Plaintiff placed his WCJ-issued blanket over his head and was directed by CO Perilli to remove the blanket while on suicide watch. *See id.* at ¶ 11. When Plaintiff refused, CO Perilli entered Plaintiff's cell and removed the blanket, causing Plaintiff to become angry. *See id.* at ¶ 12. Plaintiff then removed his socks and used them to clog his toilet, which he then repeatedly flushed, thereby flooding his cell in the B-Pod. *See id.* at ¶ 13. Plaintiff then proceeded to both urinate and defecate on the floor of his cell. *See id.* at ¶¶ 15-16. Plaintiff testified that he engaged in this behavior out of "animal instinct" because he was unhappy with his conditions of confinement. *See* Dkt. No. 73-16 at 11-12. Plaintiff then used toilet paper to push his feces towards his cell door where CO Perilli was located and stuck the contaminated toilet paper on the window of his

cell door.  *See id.* at 23; *see also* Dkt. No. 81 at ¶ 17.  Plaintiff was not charged or immediately

disciplined for his behavior in B-Pod.  Instead, after Plaintiff refused to clean his cell, he was

transferred to the WCJ booking area (for approximately forty-five minutes) before being

relocated to cell # 4 in the "Linear A" section of the WCJ and he was again placed on suicide

watch.  *See* Dkt. No. 81 at ¶ 18.

Once in WCJ's Linear A section, Plaintiff was continuously observed by CO Hubbard.

*See id.*  For a second time, Plaintiff proceeded to urinate and defecate onto his cell floor and use

his boxer shorts to clog his cell toilet and flood cell # 4.  *See id.* at ¶¶ 20-24.  As Plaintiff

described the scene, once he flooded his second cell he again "went to the bathroom on the floor

of the cell" and then "began cutting his wrist on the desk inside his cell."  Minutes later, Plaintiff

began to wrap himself in his mattress while on the bunk of his flooded cell, requiring CO Wells,

CO Spring, and Sergeant ("Sgt.") Spring to enter his cell to remove the WCJ-issued mattress so

that CO Hubbard could maintain a constant watch of Plaintiff.  *See id.* at ¶ 26.  As CO Wells and

CO Spring began to withdraw from Plaintiff's cell, Plaintiff disregarded verbal orders and

suddenly moved in the direction of the officers as they exited the cell.  *See id.* at ¶ 28.  As the

cell door was being closed, Plaintiff kicked contaminated water towards the officers, which

landed on their pants and boots.  *See id.* at ¶ 29.  In the days that followed, Plaintiff apologized to

CO Wells and CO Spring for splashing them with contaminated water.  *See id.* at ¶¶ 30-31.

After Plaintiff refused to clean cell # 4 in the Linear A area of the WCJ, he was again

removed from his cell and escorted to the WCJ booking area at which time Sgt. Spring reported

Plaintiff's conduct to his supervisors (Lt. Mayday and Captain Gates) who in turn contacted the

investigative unit of the Warren County Sheriff's Office ("WCSO").  On the afternoon of January

23, 2014, WCSO Investigator Hatin – who was not assigned to work in the WCJ – began his

investigation of the incidents involving Plaintiff, including inspection of cells # 2 and # 4, taking photographs of the areas, reviewing WCJ reports and securing sworn statements from multiple CO witnesses. *See id.* at ¶ 33. On January 24, 2014, following his investigation, Investigator Hatin decided to charged Plaintiff with Aggravated Harassment in violation of New York Penal Law § 240.32. As such, as of January 24, 2014, Plaintiff faced three distinct sets of criminal charges: (1) felony drug possession charges stemming from the January 20, 2014 arrest (hereinafter "drug case"); (2) misdemeanor Aggravate Harassment charges (pursuant to New York Penal Law § 240.30)[1] stemming from a 2010 incident; and (3) felony Aggravate Harassment charges (pursuant to New York Penal Law § 240.32) stemming from the events within cell # 4 of the Linear section of WCJ on January 23, 2014 (hereinafter "aggravated harassment case").[2]

The two felony prosecutions of charges against Plaintiff (*i.e.*, the drug case and the aggravated harassment case) were both initiated by Warren County Assistant District Attorney ("ADA") Matthew Burin, and both cases were ultimately venued in Warren County Court. However, the two prosecutions followed different timelines. The January 20, 2014, felony drug possession charges proceeded as follows:

– prompted cash bail/bond to be set at $75,000/$150,000 on
January 20, 2014. *See* Dkt. No. 81 at ¶ 3.

---

[1] The prior version of New York Penal Law § 240.30 was held to be unconstitutionally vague and overbroad in May 2014. *See People v. Gold*, 23 N.Y.3d 455 (2014). As such, the Section 240.30 charge from 2010 was not pursued after May 2014.

[2] Notably, because Investigator Hatin's investigation of Plaintiff's January 23, 2014, behavior in B-Pod did not indicate that Plaintiff successfully pushed his feces across his flooded cell far enough to come in contact with CO Perilli, no criminal charges were filed based upon Plaintiff's behavior in WCJ's B-Pod. *See* Dkt. No. 73-4 at ¶ 8.

– were initially presented to a grand jury on January 24, 2014. *See id.* at ¶ 36.

– resulted in a grand jury indictment on April 25, 2014. *See* Dkt. No. 73-29.

– were consolidated with felony drug sale charges after a second grand jury indictment on January 16, 2015. *See id.*

– resulted in a conviction on all charged on May 1, 2016. *See* Dkt. No. 81 at ¶ 49.

The January 24, 2014, felony aggravated harassment charges proceeded as follows:

– prompted cash bail/bond to be set at $25,000/$50,000 on January 31, 2024. *See* Dkt. No. 81 at ¶ 39.

– resulted in a grand jury indictment on January 31, 2014. *See* Dkt. No. 73-3 at ¶ 26.

– resulted in a conviction on both charges on August 8, 2014. *See* Dkt. No. 81 at ¶ 45.

– prompted an appeal to the Appellate Division, Third Department, which remanded the aggravated harassment case back to Warren County Court for a second trial that was conducted in January 2018 and resulted in an acquittal. *See* Dkt. No. 73-3 at ¶¶ 19-20.

During the discovery period in this action, Plaintiff refused and/or failed to: (1) respond to Defendants' demand for documents pursuant to Rule 34 of the Federal Rules of Civil Procedure; (2) respond to Defendants' Notice to Admit pursuant to Rule 36; (3) participate in multiple attempts to conduct his deposition pursuant to Rule 30 and multiple Court orders; (4) serve initial disclosures pursuant to Rule 26; (5) affirmatively conduct any discovery; or (6) comply with this Court's multiple discovery orders.

### III. DISCUSSION

**A.    Standard of Review**

***1. Failure to Prosecute***

"Rule 41(b) of the Federal Rules of Civil Procedure authorizes the district court to dismiss an action '[i]f the plaintiff fails to prosecute or to comply with [the] rules or a court order.'" *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (quoting Fed. R. Civ. P. 41(b)). A district court considering a Rule 41(b) dismissal must weigh five factors:

> "(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal."

*Id.* (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)).  No single factor is generally dispositive.  *See id.* (citation omitted).

### 2. Summary Judgment

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted).  Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).  In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson*, 477 U.S. at 255) (other citations omitted).  Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute.  *See Anderson*, 477 U.S. at 258.

7

The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case.  *See id.* at 325.  Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial.  *See* Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).  The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment." *Kotler v. Fischer*, No. 9:09-CV-01443, 2012 WL 929823, *12 (N.D.N.Y. Mar. 19, 2012) (citations omitted).  Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.    Failure to Prosecute and Obey Court Orders**

As Defendants note in their motion, although this Court has repeatedly accommodated Plaintiff during discovery (*e.g.*, explaining the deposition requirement, scheduling and rescheduling Plaintiff's remote deposition, repeatedly warning Plaintiff of the possible sanctions and affording him multiple opportunities to attend court conferences), Plaintiff has repeatedly ignored this Court's orders – most recently refusing to even leave his cell for the rescheduled deposition or the Court's August 2, 2024, conference. *See* Dkt. Nos. 68, 72; *see also* Dkt. No. 73-2 at ¶¶ 16-20. Plaintiff's repeated disregard for this Court's orders, after having been warned of the consequences of doing so, warrants dismissal.

Moreover, Plaintiff has consistently ignored Defendants' Rule 34 document demands and Notice to Admit, as well as Defendants' other good faith efforts to obtain discovery from Plaintiff. *See* Dkt. No. 73-2 at ¶¶ 3-17; Dkt. No. 73-11; Dkt. No. 73-17. Significantly, this Court repeatedly reminded Plaintiff of his discovery obligations, including specifically his obligation to participate with the deposition process (and the consequences of his failure to do so) during the July 8 and 22, 2024, discovery hearings, and in its July 24, 2024, written order. *See* Dkt. No. 73-2 at ¶ 22; Dkt. No. 64. Despite these instructions, Plaintiff has refused to participate in his deposition, disregarded the Court's orders, and prevented Defendants from obtaining evidence relevant to their defense. Additionally, Plaintiff has admitted under oath that he received Defendants' written discovery demands but that he did not review the material or respond to them in any way. *See* Dkt. No. 59-1 at 9-10; Dkt. No. 73-2 at ¶¶ 14-15.

It is well settled that a defendant in a civil action is entitled to depose the plaintiff and receive discovery upon demand, and Rule 37 provides recourse for when a party fails to meet their discovery obligations. *See* Fed. R. Civ. P. 37(d)(1). Dismissal is warranted since Plaintiff has repeatedly refused to comply with his discovery obligations, participate in his own

deposition, and repeatedly failed to comply with this Court's orders. *See Hunter v. N.Y. Dep't of Corr. Servs.*, 515 Fed. Appx. 40, 43 (2d Cir. 2013).

Accordingly, the Court grants Defendants' motion to dismiss for Plaintiff's failure to prosecute and his failure to comply with this Court's orders. Alternatively, as set forth below, the Court grants Defendants' motion for summary judgment on the merits.

**C.    Summary Judgment**

**1. Malicious Prosecution**

To prevail on a Section 1983 claim for malicious prosecution, "a plaintiff must show a violation of his rights under the Fourth Amendment . . . and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted). Under New York law, a plaintiff must establish four elements to support a malicious prosecution claim: "'(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Id.* (quotation and other citations omitted); *see also Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) (quotation omitted). Initiating a criminal proceeding against a person without probable cause, coupled with a deprivation of liberty, is a Fourth Amendment violation. *See Murphy v. Lynn*, 118 F.3d 938, 944-45 (2d Cir. 1997) (citation omitted).

As Defendants note, the evidence before this Court demonstrates that nearly all of the facts surrounding Plaintiff's aggravated harassment charges are undisputed. *See* Dkt. No. 81 at ¶¶ 10-32. The only facts which Plaintiff appears to dispute are (1) the precise trajectory of the contaminated water (directly onto CO Wells and CO Spring or under the cell door) and (2)

10

Plaintiff's intentions as he moved towards the officers in his flooded cell. As discussed in more detail below, as the record evidence reflects, Plaintiff admits that on January 23, 2014, Plaintiff: acted out of anger (or as he described it his "animal instinct") towards that WCJ officers; was trying to get a reaction out of the WCJ officers; intentionally flooded his cell in Linear A; urinated in his flooded cell; defecated in his flooded cell; moved towards COs Wells and Spring as they were trying to leave his flooded cell with mattress; believed that his movements might have caused the officers to be splashed with the contaminated water; and the officers immediately looked down at their soiled boots and lower pant legs after exiting Plaintiff's cell. *See* Dkt. No. 81 at ¶¶ 29-30; Dkt. No. 73-8 at ¶¶ 10-11; Dkt. No. 73-9 at ¶¶ 12-13; Dkt. No. 73-33.

### a. Malice

Initially, the Court finds that the undisputed facts do not support a finding of malice by any of the named Defendants. Rather, the undisputed facts demonstrate that Defendants responded to Plaintiff's aggressive, unsanitary, and dangerous behavior on January 23, 2014, in a legitimate and measured manner. Specifically, the record demonstrates that Defendants attempted to de-escalate the situation, redirected Plaintiff, provided him with opportunities to clean his cell and cease his behavior, relocated Plaintiff to a different cell, and passively removed the items Plaintiff was using to interfere with the officers' suicide watch obligations. *See* Dkt. No. 73-7 at ¶¶ 5, 7-8, 10; Dkt. No. 73-6 at ¶¶ 6-12; Dkt. No. 73-5 at ¶¶ 6, 8-14; Dkt. No. 73-8 at ¶ 6; Dkt. No. 73-9 at ¶¶ 8-10. Based on these undisputed facts, the Court finds that Plaintiff has failed to demonstrate that any of the named Defendants acted with malice.

### b. Actual or Arguable Probable Cause

Probable cause, an element of a malicious prosecution claim, is "evaluated on the totality of the circumstances." *Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007) (citation omitted). In a malicious prosecution case, the timing of a probable cause determination is crucial. "Although the existence of probable cause must be determined with reference to the facts of each case, in general '[p]robable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Manganiello*, 612 F.3d at 161 (quotation and other citations omitted). The Second Circuit has explained that

> [u]nder New York law, "even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause.'... In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact.... The New York Court of Appeals has noted that "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause."

*Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (quotations and other citations omitted).

Additionally, because the doctrine of qualified immunity "affords officials 'breathing room to make reasonable but mistaken judgments' without fear of potentially disabling liability," the court must use "a deliberately 'forgiving' standard of review" in determining its application. *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)) (other quotation omitted). To this point, "[a]n officer is entitled to qualified immunity if he can establish that there was 'arguable probable cause' to arrest." *Adebiyi v. City of New York*, No. 13-CV-480, 2014 WL 4922888, *5 (E.D.N.Y. Sept. 30, 2014) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). Arguable probable cause is

12

an "analytically distinct test for qualified immunity" that "is more favorable to the officers than the one for probable cause." *Escalera*, 361 F.3d at 743. "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

In the present matter, the undisputed facts establish that a Warren County grand jury indicted Plaintiff on the aggravated harassment charged on January 31, 2014, *see* Dkt. No. 81 at ¶ 41, and a Warren County jury convicted Plaintiff of those same charges in August 2014, *see id.* at ¶ 45, which establishes a presumption of probable cause. *See Walker v. Sankhi*, 494 Fed. Appx. 140, 142-43 (2d Cir. 2012); *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 228 (S.D.N.Y. 2006) (holding that "'[a] conviction establishes the existence of probable cause which, even when the conviction is reversed on appeal, becomes a rebuttable presumption'") (quotation omitted). Plaintiff has the burden to establish the lack of probable cause, which he has failed to do.

As of January 24, 2014, when Investigator Hatin prepared the two aggravated harassment charges based upon the information he received from his investigation and his communications with Sgt. Spring and COs Hubbard, Perilli, Spring, and Wells, there is no doubt that probable cause existed. At that time, the following undisputed facts established probable cause as a matter of law:

> – Prior to his arrival in cell #4 of the Linear A area of the WCJ, while in cell #2 of B-Pod on suicide watch, Plaintiff had intentionally flooded his cell, urinated on his cell floor, defecated on his cell floor, disregarded numerous legitimate orders by WCJ officers, threatened Perilli and pushed his feces towards Perilli who was maintaining a suicide watch outside his cell – all in response to the removal of a blanket that Plaintiff was using to cover his head. *See* Dkt. No. 81 at ¶¶ 11-17.

– Plaintiff intentionally clogged and flushed the toilet in cell #4 thereby flooding the cell. *See id.* at ¶ 12.

– Plaintiff urinated and defecated in cell #4. *See id.* at ¶¶ 21-22.

– Plaintiff flooded, urinated, and defecated the floor in cell #4 for the purpose of provoking a response from the WCJ COs. *See id.* at ¶¶ 21-25.

– Plaintiff's actions of flooding, urinating, and defecating on the floor in cell #4 caused contaminated water, that was two-to-four inches deep, to travel under the space below his cell door into the common area of the Linear A area of the WCJ. *See id.* at ¶ 27.

– Plaintiff covered himself with the mattress in cell #4 prompting Sgt. Spring and COs Wells and Spring to enter cell # 4 to retrieve the mattress. *See id.* at ¶ 26.

– While Sgt. Spring, and COs Wells and Spring were in cell #4, after Plaintiff had flooded the cell with contaminated water, Plaintiff disregarded orders to stay on his bunk. *See id.* at ¶ 28.

– As Sgt. Spring and COs Wells and Spring were exiting cell #4, Plaintiff moved across the flooded cell towards all three uniformed officers causing contaminated water to splash onto COs Wells and Spring. *See id.* at ¶¶ 28-32.

Under New York law, "[a]ggravated harassment of an employee by an inmate requires that an inmate, 'with intent to harass, annoy, threaten or alarm a person in a facility whom he or she knows or reasonably should know to be an employee of such facility ..., causes or attempts to cause such employee to come into contact with blood, seminal fluid, urine, feces, or the contents of a toilet bowl, by throwing, tossing or expelling such fluid or material.'" *People v. Poulos*, 144 A.D.3d 1389, 1390 (3d Dep't 2016) (quoting N.Y. Penal Law § 240.32).

In his appeal of his conviction on the aggravated harassment charges, the Third Department rejected Plaintiff's argument that his conviction on the aggravated harassment charges was against the weight of the evidence and, instead, reversed Plaintiff's conviction due to the trial court's denial of Plaintiff's request to represent himself without first conducting the

requisite inquiry regarding Plaintiff's waiver of his right to counsel. *See Poulos*, 144 A.D.3d at 1390-92. The Third Department confirmed that Plaintiff's "act of kicking the water, and projecting same onto the corrections officers, constitutes 'expelling' the water within the embrace of the statute" and that the evidence presented at trial was sufficient to support his conviction on the charges. *See id.* at 1390-91. Regarding Plaintiff's intent, the evidence before this Court includes (1) Plaintiff's verbal threats to CO Perilli, *see* Dkt. No. 73-6 at ¶ 7; (2) Plaintiff's admission that he was acting out of his animal instinct, *see* Dkt. No. 81 at ¶ 24; (3) Plaintiff's apologies to COs Spring and Wells, *see id.* at ¶¶ 30-31; (4) Plaintiff's admissions that he acted out with the purpose of provoking a response from the WCJ staff; and (5) Plaintiff's act of running towards the officers in cell #4 in violation of their order to remain on his bunk, *see id.* at ¶¶ 29-32. Based on this evidence, when Investigator Hatin prepared the charges on January 24, 2014, and when ADA Burin initially chose to prosecute those charges, they had knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense had been committed by Plaintiff based upon eyewitness accounts, supported by sworn statements as well as photographs of the incident scene.

As such, the Court finds that the overwhelming evidence of probable cause requires the dismissal of Plaintiff's malicious prosecution claim. Alternatively, the Court finds that Defendants had arguable probable cause for all of the reasons set forth above; and, therefore, Defendants are entitled to qualified immunity as to this claim.

### c. Initiation or Continuation of Prosecution

The Second Circuit has held that although "police officers do not generally "commence or continue" criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to 'play[ ] an active role in the

prosecution, such as giving advice and encouragement or importuning the authorities to act.'"

*Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (quotations omitted).  "This element might be satisfied by, for example, showing that an officer generated witness statements or was regularly in touch with the prosecutor regarding the case." *Id.* (citation omitted).

Recently, the New York Court of Appeals acknowledged that it has "'never elaborated on how a plaintiff in a malicious prosecution case demonstrates that the defendant commenced or continued the underlying criminal proceeding.'" *Torres v. Jones*, 26 N.Y.3d 742, 760-61 (2016) (quotation omitted).  "But, by suggesting that a defendant other than a public prosecutor may be liable for supplying false information to the prosecutor in substantial furtherance of a criminal action against the plaintiff, we have implicitly recognized that such conduct may, depending on the circumstances, constitute the commencement or continuation of the prosecution." *Id.* at 761 (citations omitted); *see also Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983) (noting that proof establishing "that the police witnesses" have falsified evidence may create liability for malicious prosecution); *Hopkinson v. Lehigh Val. R.R. Co.*, 249 N.Y. 296, 300-01 (1928) (noting that the falsification of evidence and presentation of that evidence to the prosecutor can constitute commencement of a prosecution).

Here, the undisputed evidence establishes that Defendants D. Spring, Wells, Hubbard, Perilli, and B. Spring did not initiate or continue Plaintiff's prosecution for the January 24, 2014, aggravated harassment charges.  The undisputed evidence establishes that Defendants D. Spring, Wells, Hubbard, Perilli, and B. Spring had no involvement in (1) the decision to charge Plaintiff with aggravated harassment under Section 240.32; (2) the preparation of the charges; or (3) the prosecution of such charges.  *See* Dkt. No. 81 at ¶ 35.  Moreover, nothing before the Court supports the allegations in Plaintiffs' amended complaint wherein he alleges that these

Defendants knowingly submitted fabricated evidence and perjured themselves before the grand jury and at trial. Rather, the undisputed facts clearly establish that there was overwhelming evidence that Plaintiff committed the conduct charged and that, but for the trial court's failure to conduct a proper inquiry regarding Plaintiff's request to represent himself, his initial conviction on those charges would have been upheld on appeal. *See Poulos*, 144 A.D.3d at 1390-91.

Accordingly, the Court finds that Plaintiff's malicious prosecution claim is subject to dismissal on this alternative ground.

### d. Deprivation of Liberty

Finally, the Court also finds that Plaintiff's malicious prosecution claim is subject to dismissal because he did not suffer a deprivation of his liberty interests as a result of the January 24, 2014, aggravated harassment charges. The undisputed facts demonstrate that before and after the preliminary hearing on April 4, 2014, Plaintiff was and remained an inmate remanded to the WCJ (and then state prison) as a result of multiple charges (*i.e.*, the 2010 harassment charge, the January 20, 2014, drug possession charges, and the January 24, 2014, felony aggravated harassment charges) on bail/bond conditions that Plaintiff could not meet. *See* Dkt. No. 73-3 at ¶¶ 17-21-22.

In its September 22, 2021, Memorandum-Decision and Order, this Court concluded at the pleading stage as follows:

> Plaintiff does not claim that he was released from prison after he was acquitted on the two counts of aggravated harassment of an employee. Plaintiff also does not claim that he was able to afford the bail for his drug charges and was out on bail when he was arrested. Rather, the complaint makes clear that at all times before and after the accrual of his claims, Plaintiff was incarcerated. In fact, according to the DOCCS website, Plaintiff is currently serving a thirty-year sentence based on his convictions for the state drug offenses that brought him to the Warren County Jail, while awaiting trial on those charges. Plaintiff has therefore failed to

17

allege a deprivation of liberty and fails to state a claim for
malicious prosecution.

Dkt. No. 28 at 11.  In reversing this Court's decision dismissing the amended complaint, the

Second Circuit interpreted the operative pleading liberally, concluding that Plaintiff "sufficiently

alleged a deprivation of his liberty because – between his release on the drug charges in [April]

2014 and his conviction on those charges in 2016 – he claims that he was detained solely on the

harassment counts ...  Accepting [Plaintiff's] allegations as true, he would not have been detained

during this period but for the harassment charges." Dkt. No. 32 at 7.  Additionally, the Second

Circuit held that it could not consider Defendants' argument, at the motion to dismiss stage, that

ADA Burin would have appeared for the April 2014 preliminary hearing on the drug charge to

ensure that Plaintiff would not have been released from custody, but he declined to do so

because Plaintiff was already ordered detained on the aggravated harassment charges.  *See id.* at

7 n.1.

Now that the parties have engaged in discovery, and the Court is no longer obligated to

accept the allegations in the amended complaint as true, the Court may consider the argument

raised by Defendants before the Second Circuit.  The order remanding Plaintiff to the WCJ on

the drug case was issued on January 21, 2014, and set his bail in the amount of $75,000 cash or

$150,000 bond.  *See* Dkt. No. 73-31 at 2.  The order setting Plaintiff's bail/bond for the January

24, 2014, aggravated harassment charges was not issued until January 31, 2014, and set bail in

the amount of $25,000 cash or $50,000 bond.  *See id.* at 4.  According to ADA Burin, he did not

appear at the April 4, 2014, preliminary hearing based on a decision made by his supervisors that

there was no need to appear because Plaintiff had already been indicted in the aggravated

harassment case and remanded to the WCJ under bail terms that he could not meet.  *See* Dkt. No.

73-3 at ¶ 21.  ADA Burin explained that, had Plaintiff not been charged with aggravated

18

harassment and remanded on bail conditions he could not meet for those charges, his office would have appeared for the April 4, 2014, preliminary hearing and presented the same evidence in Plaintiff's drug case that prompted a series of securing orders in Plaintiff's drug case, which all set Plaintiff bail at an amount that he was unable to meet. *See id.* (citing securing orders in Plaintiff's drug case dated January 20, 2014, January 21, 2014, January 24, 2014, January 27, 2014, January 31, 2014, February 3, 2014, and February 10, 2014). Moreover, ADA Burin notes that Plaintiff's amended complaint fails to note that a Warren County grand jury was convened to hear his presentation on Plaintiff's drug case on January 24, 2014; just four days after Plaintiff's drug-related arrest. *See id.* ADA Burin states that he was prepared to present the same evidence in pursuit of a felony indictment in the drug case on January 24, 2014, as he ultimately presented to the grand jury on April 25, 2014, which promptly indicted Plaintiff on all drug charges. *See id.* ADA Burin explains that the delay in securing the indictment in the drug case was due to Plaintiff's conduct, including the fact that he claimed to be ill on January 24, 2014, when he was scheduled to testify before the grand jury and his refusal to testify during subsequent attempts to present the drug case to the grand jury. *See id.*

Based on the undisputed evidence, Plaintiff was continuously an inmate at the WCJ and various state prisons based upon multiple securing orders, setting bail/bond conditions that Plaintiff could not meet. As such, the Court finds that Plaintiff's malicious prosecution claim is subject to dismiss on this alternative ground.

### 2. Right to a Fair Trial

Plaintiff alleges that Defendants deprived him of a right to a fair trial by fabricating evidence or offering false testimony concerning the aggravated harassment charges. *See* Dkt. No. 11.

19

"To prove a Section 1983 fair trial claim, a plaintiff must establish that (1) the officer created false information, (2) the officer forwarded the false information to prosecutors, (3) the false information was likely to influence a jury's decision, and (4) the plaintiff suffered a deprivation of life, liberty, or property as a result of the officer's actions." *Kee v. City of New York*, 12 F.4th 150, 168 (2d Cir. 2021) (citing *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279-80 (2d Cir. 2016)).

In the present matter, Plaintiff has failed to put forth any evidence that any Defendant fabricated evidence or committed perjury. Moreover, the testimony presented to this Court by each individual Defendant describing their roles, actions, motives, and processes makes clear that there was no falsification or perjury. Courts in the Second Circuit have repeatedly made clear that fabrication involves knowingly making a false statement. *See Steinbergin v. City of New York*, No. 21-536, 2022 WL 1231709, *4 (2d Cir. Apr. 27, 2022) (citation omitted); *Ashley v. City of New York*, 992 F.3d 128, 143 (2d Cir. 2021). Nothing in the record before the Court supports Plaintiff's claims in his amended complaint that Defendants knowingly made false statements or fabricated evidence that was used in furtherance of his prosecution, which is fatal to his right to a fair trial claim.

The allegations in Plaintiff's amended complaint focus on the issues of the timing of the door to cell #4 closing relative to Plaintiff's action of expelling contaminated water in the direction of COs Wells and Spring and the "flight path" of the contaminated water from his cell floor to the boots and pants of COs Wells and Spring. Specifically, Plaintiff points to minor discrepancies in Defendants' written statements, grand jury testimony, and testimony at trial. While such discrepancies would have been fodder for Plaintiff's defense counsel to create the appearance of "reasonable doubt" during Plaintiff's criminal trial, nothing in the record supports

20

the conclusion that these Defendants fabricated their testimony in any way. Rather, the record makes clear that these discrepancies were simply the product of imperfect recollections about a quickly-unfolding situation. *See Savarese v. City of New York*, 547 F. Supp. 3d 305, 348 (S.D.N.Y. 2021) (holding that imperfect recollections by law enforcement witnesses do not constitute fabrication or implicate the public policy served by the "fair trial" concept").

Additionally, the Court finds that the issues identified by Plaintiff in his amended complaint were not material as they were not likely to influence a jury's decision. This is particularly obvious when the Court considers that Plaintiff admits the following: (1) that he flooded cell #4 and contaminated the flood water that was two-to-four inches deep, *see* Dkt. No. 81 at ¶¶ 20-24, 27; (2) that he disregarded commands to get a reaction from the officers, which he did based on his "animal instincts," *id.* at ¶ 28; (3) that he left his bunk and moved across his flooded cell towards the officers as they exited cell #4, *see id.* at ¶ 29; (4) he knew that his movements towards the officers caused them to be splashed with contaminated water, *see id.* at ¶¶ 29-32; and (5) after his "animal instincts" subsided, he apologized to both officers for causing them to be splashed by the contaminated water, *see id.* at ¶¶ 30-31. Based on these facts, it is clear that any false testimony would not have been likely to influence a jury's decision; and, therefore, this claim is subject to dismissal on this alternative ground.

Finally, as set forth above, the undisputed facts establish that Plaintiff did not suffer any additional deprivation of his liberty interest as a result of the January 24, 2014, aggravated harassment charges, which is fatal to this claim. *See Soomro v. City of New York*, 174 F. Supp. 3d 806, 815 (S.D.N.Y. 2016) (citation omitted).

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's right to a fair trial claim.

### *3. Prosecutorial Immunity*

"The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy." *Anilao v. Spota*, 27 F.4th 855, 863-64 (2d Cir. 2022) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)).  The Second Circuit has made clear that "prosecutors enjoy 'absolute immunity from § 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process.'" *Id.* at 864 (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)).  "The immunity covers 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.'" *Id.* (quotation and other citation omitted).  "For example, a prosecutor enjoys absolute immunity when determining which offenses to charge, initiating a prosecution, presenting a case to a grand jury, and preparing for trial." *Id.* (citations omitted); *see also Imbler*, 424 U.S. at 431 (concluding that a prosecutor is absolutely immune from a § 1983 suit for damages based on his "initiating a prosecution and ... presenting the State's case").  For that reason, the Second Circuit has held that "absolute immunity extends even to a prosecutor who 'conspir[es] to present false evidence at a criminal trial.  The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it.'" *Anilao*, 27 F.4th at 864 (quotation omitted).

"'Thus, unless a prosecutor proceeds in the clear absence of all jurisdiction, absolute immunity [from § 1983 liability] exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process.'" *Id.* (quotation and emphasis omitted); *see also Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005).  "'Conversely, where a

prosecutor acts without any colorable claim of authority, he loses the absolute immunity he would otherwise enjoy' and is left with only qualified immunity as a potential shield." *Id.* (quotation and other citation omitted). "'[A] limitation upon the immunity,' Chief Judge Hand explained, '[is] that the official's act must have been within the scope of his powers,' but this does not mean that 'to exercise a power dishonestly is necessarily to overstep its bounds.'" *Id.* (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)).

"A narrow limitation to the scope of absolute immunity in § 1983 actions thus exists where the defect is jurisdictional — that is, where the prosecutor acted well outside the scope of authority, rather than where the defect relates, as here, to the prosecutor's motivation or the reasonableness of his official action." *Anilao*, 27 F.4th at 864. "The jurisdictional defect must be clear and obvious." *Id.* "'In considering whether a given prosecution was clearly beyond the scope of that jurisdiction, or whether instead there was at least a colorable claim of authority, ... we inquire whether' any relevant criminal statute exists that 'may have authorized prosecution for the charged conduct.'" *Id.* at 864-65 (quotation and other citation omitted).

"So '[e]ven if a prosecutor may lose his absolute immunity for prosecutorial acts for which he has no colorable claim of authority,' it is not lost 'immediately upon crossing the technical bounds of the power conferred on him by local law,' or 'simply because he acted in excess of his authority.'" *Anilao*, 27 F.4th at 865 (quotation omitted); *see also Ashelman v. Pope*, 793 F.2d 1072, 1076-77 (9th Cir. 1986) (*en banc*) (unanimously holding that a prosecutor was entitled to absolute immunity after overruling a prior Ninth Circuit holding that a prosecutor who "'files charges he or she knows to be baseless ... is acting outside the scope of his or her authority and thus lacks immunity'") (quotation omitted). "Instead, 'absolute immunity must be denied' only where there is both the absence of all authority (because, for example, no statute authorizes

the prosecutor's conduct) and the absence of any doubt that the challenged action falls well outside the scope of prosecutorial authority." *Anilao*, 27 F.4th at 865 (quoting *Bernard v. County of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004)).  In the vast majority of cases "the laws do authorize prosecution for the charged crimes," *Bernard*, 356 F.3d at 504, and if the charging decision or other act is within the prosecutor's jurisdiction as a judicial officer, then absolute immunity attaches to their actions "regardless of any allegations" that their "actions were undertaken with an improper state of mind or improper motive," *Shmueli*, 424 F.3d at 237. "Prosecutors thus have absolute immunity in a § 1983 action even if it turns out that 'state law did not empower [them] to bring the charges,' so long as 'they have at least a semblance of jurisdiction' that does not run far afield of their job description." *Anilao*, 27 F.4th at 865 (quotation omitted); *see also Barr*, 810 F.2d at 361 (declining to adopt "a holding that a prosecutor is without absolute immunity the moment he strays beyond his jurisdictional limits," because doing so would "do violence to [the] spirit" of the doctrine).

However, absolute immunity does not thwart every claim against prosecutors.  Under the functional test, "absolute immunity may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (quoting *Imbler*, 424 U.S. at 431 n.33). Investigative tasks beyond the scope of absolute immunity are those "normally performed by a detective or police officer." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *see also Kanciper v. Lato*, 989 F. Supp. 2d 216, 228-29 (E.D.N.Y. 2013) ("Investigation, arrest, and detention have historically and by precedent been regarded as the work of police, not prosecutors, and 'they do not become prosecutorial functions merely because a prosecutor has chosen to participate'") (quoting *Day v. Morgenthau*, 909 F.2d 75, 77-78 (2d Cir. 1990)).  Where

absolute immunity does not apply, a prosecutor is eligible only for qualified immunity. *See Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998) (citing *Buckley*, 509 U.S. at 273).

Prosecutors generally only have qualified immunity for actions taken before there is probable cause to arrest a defendant, because they are performing an investigative function, rather than acting as advocates. *See Hill*, 45 F.3d at 661; *Buckley*, 509 U.S. at 273. And, although "knowingly presenting evidence" to a grand jury is considered the "core of a prosecutor's role as an advocate," *Bernard*, 356 F.3d at 503, the Second Circuit has distinguished between a prosecutor's knowing presentation of false evidence to the grand jury — which is still entitled to absolute immunity — from a prosecutor's deliberate fabrication of evidence, *Hill*, 45 F.3d at 662-63 (finding that where a prosecutor deliberately manufactured evidence to establish probable cause for the plaintiff's arrest, his conduct was investigatory, regardless of whether, when the evidence was manufactured, the prosecutor intended to present it to the grand jury).

In the present matter, the malicious prosecution and deprivation of the right to a fair trial claims are also subject to dismissal as to Defendant Burin under the doctrine of prosecutorial immunity. The undisputed record evidence establishes that Defendant Burin never took any action regarding Plaintiff, nor engaged in any function, outside of his role as a prosecutor. *See generally* Dkt. No. 73-3. Moreover, the evidence is clear that Defendant Burin did not engage in conduct that was well outside the scope of his authority.

Accordingly, the claims against Defendant Burin are dismissed on this alternative ground.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss pursuant to Rules 37 and 41(b) and, alternatively, for summary judgment (Dkt. No. 73) is **GRANTED in its entirety**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules

**IT IS SO ORDERED.**

Dated: December 20, 2024
         Albany, New York

Mae A. D'Agostino
U.S. District Judge